Michael Pancer
State Bar No. 43602
105 West F Street, Fourth Floor
San Diego, CA 92101
Telephone: (619) 236-1826
Facsimile: (619) 233-3221
Email: mpancer@hotmail.com

Attorney for Defendant
VINCENT RAMOS

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**(HONORABLE BARBARA LYNN MAJOR)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>VINCENT RAMOS,<br><br>　　　　Defendant. | Case No.: 18CR1404-WQH (BLM)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR BAIL**<br><br>DATE: April 3, 2018<br>TIME: 9:30 a.m. |

**I.**

**SYNOPSIS**

The government has requested that Defendant, Vincent Ramos ("Mr. Ramos"), be detained as a flight risk. This Memorandum is in support of our opposition to that request as there are conditions that would ensure our client's appearance in court.

**II.**

**VINCENT RAMOS IS NOT A FLIGHT RISK**

**A.   The Law Favors Release of Vincent Ramos Pending Trial**

"Only in rare cases should release be denied." (*United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) (citations omitted).) The right of the accused to be released pending trial is a firmly rooted tenet of our criminal justice system.

1

The Supreme Court has repeatedly affirmed the right of persons charged with crimes to be released with bail. In *Stack v. Boyle*, 342 U.S. 1 (1951), the Supreme Court strongly stated that:

> [F]ederal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

*(Stack*, 342 U.S. at 4.)

In 1984, Congress passed a Bail Reform Act (which superceded its predecessor, the Bail Reform Act of 1966). In *United States v. Salerno*, 481 U.S. 739, 750 (1987), the Court held that the portions of the 1984 Act permitting detention withstood a facial challenge under both the Due Process Clause and the Eighth Amendment because of the extensive procedural safeguards the Act guaranteed, including "a full-blown adversary hearing" by a "neutral decision maker."

Notwithstanding the passage of the Bail Reform Act in 1984, the historical importance of pretrial release to our criminal justice system remains of critical importance:

> [I]t is well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance. Executive power to detain an individual is the hallmark of the totalitarian state. Under our Constitution the prohibition against excessive bail, the Due Process Clause of the Fifth Amendment, the presumption of innocence --indeed, the fundamental separation of powers among the Legislative, the Executive and the Judicial Branches of Government -- all militate against this abhorrent practice. Our historical approach eschewing detention prior to trial reflects these concerns . . . .

(*United States v. Montalvo-Murillo*, 495 U.S. 711, 723-24 (1990) (Stevens, J., dissenting).) The Bail Reform Act of 1984 has thus far withstood Constitutional challenges only because the Supreme Court found that "Congress carefully prescribed stringent procedures to govern this extraordinary departure from the

guarantee of liberty normally accorded to presumptively innocent individuals." (*Montalvo-Murillo*, 495 U.S. at 724-25 (Stevens, J., dissenting).)

      The Ninth Circuit has also strongly affirmed the idea that "federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail." (*United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (reversing district court's order of detention based on risk of flight of an Iranian citizen, who maintained large foreign bank accounts where the majority of the deposits were made by Iranian Government, who was charged with exporting military items without a license, and who had been warned that his activities were illegal to do so by both U.S. Customs and the FBI).) The Ninth Circuit has made firmly clear "[o]nly in rare circumstances should release be denied." (*Id*.) Simply put, any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." (*Id*.) It is within this framework – with an acknowledgment of the critical role pretrial release plays within our system of criminal justice that Mr. Ramos asks this Court to set a reasonable bail.

      **B.**    **<u>Standard for Detention Based on Risk of Flight</u>**

      Given that the Government has charged Mr. Ramos with an offense enumerated in 18 U.S.C. § 3142(e)(3) and (f)(1), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Hence, Mr. Ramos must demonstrate that conditions exist that would ensure his appearance as required and the safety of the community. In making this determination, this Court must take into account the factors enumerated in 18 U.S.C. § 3142(g). Moreover, the facts this Court uses to support a finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." (18 U.S.C. § 3142(f).) An analysis of the factors to be considered pursuant to § 3142(g) are set forth in Section I.C. below.

We believe that the following combination of conditions will reasonably assure the appearance of Mr. Ramos and the safety of the community: (a) a corporate bond that would be secured by the residence that Mr. Ramos's wife, Sharelijane Lotus Vicera ("Sharel"), and their four children currently reside in; (b) that Mr. Ramos would reside in an apartment he would lease in San Diego prior to his release; ( c ) GPS monitoring; and (d) any other condition that this Court deems appropriate.  We believe that if this Court orders condition (a), we can demonstrate that the residence has the residence has in excess of the equity needed to secure a 500,000.00 corporate surety bond.  Furthermore, in anticipation of a bail being set, Sharel has filled out a bond Surety Addendum, as well as sent counsel the necessary documents; however, we do not anticipate filing surety documents until the court decides whether we have rebutted the presumption.  Unfortunately, due to the four children's schedules next week, Sharel will be unable to attend the detention hearing on April 3, 2018.  That being said, Sharel is very supportive of Mr. Ramos getting out on bond as she needs his assistance with the children, as well as the fact that he is the sole provider for their family.  If the court were to agree to set bond as requested, we understand a final order would not issue until his wife appears in this Court and is examined by the court.

**C.  An Analysis of the Factors Required to be Considered by 18 U.S.C. § 3142(g) Favors Release**

**1.  The Nature and Circumstances of the Offense Charged**

Mr. Ramos has been charged with one count of Racketeering Conspiracy to Conduct Enterprise Affairs (RICO Conspiracy), one count of Conspiracy to Aid and Abet the Distribution of Cocaine, and Criminal Forfeiture.  While Mr. Ramos would concede the nature of the allegations are serious, as is any federal offense, Mr. Ramos is not charged with any crimes of violence, any crimes involving weapons, or any crimes involving threats or injuries.  Mr. Ramos's charges are non-violent and non-capital, and thus, bail is strongly favored. (*See Stack v.*

*Boyle*, 342 U.S. 1, 4 (1951); *see also Sellers v. United States*, 89 S.Ct. 36, 38 (1968).)

### 2. The Weight of the Evidence.

The Ninth Circuit has repeatedly held the weight of the evidence is the least important factor to be considered by this Court in determining bail. (*United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986)("Section 3142 neither requires nor permits a pretrial determination that the person is guilty; the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community."); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).) Pursuant to § 3142(j), the presumption of innocence prevails. "Nothing in the [Bail Reform Act of 1984] shall be construed as modifying or limiting the presumption of innocence." (Title 18 U.S.C. § 3142(j) (2016).) Mr. Ramos does not address the merits of the evidence against him simply because he is presumed innocent, and equally as important, to date he has not been provided with any discovery.

### 3. The History and Characteristics of the Person

Section 3142(g)(3) lists a number of factors regarding the history and characteristics of a person to be considered in making the release determination. These factors are listed and explored below, and all mitigate in favor of setting bail.

#### (a). The person's character

Mr. Ramos's character speaks of an educated man with familial and employment stability, and a history of respect for the law. Mr. Ramos was born on November 16, 1977, in Winnipeg, Canada. His father was a janitor and his mother was a nurse. At the age of four, Mr. Ramos and his family moved to Vancouver. He has lived there ever since, which demonstrates deep roots to his community. Mr. Ramos has one sister, Cheryl. They are very close.

1     Mr. Ramos is married to a very supportive and loving woman named
2 Sharel. She is a homemaker. They have three children together, Sharyssa (age 9),
3 Sharlem (age 8), and Sasha (age 5). Mr. Ramos also has a son, Deon (age 18),
4 from a previous marriage. Sharel considers Deon to be her own son.
5     It is important to note that Mr. Ramos has no prior criminal record. He
6 finds himself in trouble with the law for the first time.
7     Those that know Mr. Ramos best have expressed shock at hearing of his
8 arrest. In letters to this Court attached as Exhibit "A", his loved ones talk about
9 their support for Mr. Ramos, as well as about his character, in pertinent part,
10 as follows:

> . . . I have known Vincent Gabriel Ramos since 2007 as he is the husband to my sister Sharel Vicera. . . [¶.] Vince, as we call him, is one of the most generous, helpful, kind spirited individual[s] I have ever met in my life. I am so lucky to have a brother in law who is understanding and is always willing to give a helping hand. He is truly a family man, is loving, caring and is always supportive of his family and children in anything they wish to do whether it is in sports or hobbies. . . . [¶.] . . . Not only is he a role model to his children [on the flag football team,] but also to his friends and colleagues. . . One of his great characteristics is that he's always motivating everyone. He has numerous great qualities in him and that is why he has many friends that know him as being trustworthy.
> Shellaine Vicera

> . . . I am Vince's brother-in-law and have been married to his older sister, Cheryl, since 2004. I've known Vince since 2001. [¶.] . . . Vince is just naturally very affectionate and generous. He is an integral cog to their family dynamic. [¶.] A couple of other things I know about Vince... his friends and extended family all think very highly of him, as someone always willing to help. He also is a very hard worker. . .
> Dr. Chris Gordillo

> I have known Vince for a period of 10 years. Throughout the years, he has been nothing but a great friend, role model and brother in law. He is an outstanding citizen, and I can only mention positive attributes about him as that is what he is known for. . . Vincent is a humble, kind soul and I can easily describe him as a super dad. . . It is quite painful to have to witness the separation between Vincent and his children,

6

as their relationship is inseparable before this unfortunate incident had occurred. On top of being super dad, Vincent is always working hard to care for his elderly parents, also to his elderly aunt and uncle who rely on his presence to keep them strong and happy. . . He is also a loyal and dedicated husband to my sister, and always strives to give his best to her. Vincent also helped bring in my late grandma into his home during the last few years of her life, which was an extensive amount of care and attention. . . He also helps my mother who is turning 70 this year. . . Vincent is overall the perfect example of a loving son, brother, father, husband, uncle, friend and a godfather to many children including my son. . . [¶.] The nature of the offences is very surprising and shocking, as I have always known Vincent Ramos to be an intelligent, personable, hard-working and trustworthy individual. . . [¶.] I hope this letter will give you an idea of his good moral character and will help him get a second chance to prove this was an unusual occurrence, as well as his innocence.
   Patricia Mendoza

I have known Vince for the past ten years. He has been happily married to my wife's sister Sharel. [¶.] Vince is a wonderful father who always shows love to his family and friends. [¶.] His children are a reflection of his character. They are loving, caring, smart, athletic and happy. [¶.] Vince makes it a priority to be directly involved in his children's lives. [¶.] Whether it's coaching his son Sharlem's football team, practicing jujitsu with Sharyssa or playing tea time with his baby princess Sasha. . . [¶.] I ask whatever outcome that is given to Vince that his children are considered. His loving presence in their lives is immeasurable.
   Ronald Sombilon

I have known Vincent Ramos and his family for my entire life. Vincent's father's brother married my father's second cousin and by Filipino cultural standards this would have us, from a very young age, referring to each other as cousins. [¶.] . . . A loving father, husband, brother, and son, Vincent is well respected by many in the community and is the foundation of his family. He volunteers his time coaching elementary school sports and is a role model parent. . . He is a trusted advisor and a dear friend . . .
   Bienvenido Matute

I have known Vincent Ramos for over 20 years. We have grown up together as young men obsessed with basketball and cruising in our cars to fathers obsessed with their families. Vince and I take pride in our children and caring for them in every way we can. He is a kind, generous and caring man. [¶.] Vince is an outstanding father and husband . . . [¶.] Vince's main

priority in life is ensuring that he is the best dad he can be.  We discuss raising children with solids [sic] values and an industrious work ethic. . .  [¶.]  Vincent Ramos is an excellent friend and even better father and husband. . .  Vince always reminds me that family is paramount and that everything else comes second.  He truly is an outstanding individual.
  Roy Kanda

I have known Vincent Ramos since I was ten years old as we both grew up in Richmond together.  He has been one of my best friends for the last 30 years and we have remained in touch even though I moved away from Canada to Africa. . . He is very caring as a husband to his wife and father to his four children.  He has been supporting and looking after his parents for the last 10 years.  [¶.]  I have always known Vincent Gabriel Ramos as a hard working, intelligent, honest family man.
  Alykhan Allibhai

Vincent and I are close childhood friends as we grew up together and have known each other for 30 years.  Now that we are both father's, our families socialize together and our children enjoy playing together.  [¶.] . . . Vincent developed his extremely strong and disciplined work ethic from his parents at [a] very early age.  Vincent is a devoted husband and father of 4 children.  I have always admired his honesty and strong family values.
  Omar Janmohamed

I have been preparing personal tax returns of Vincent Ramos for over 10 years and giving tax advice to him and his corporation, Phantom Secure Communications Inc. from the time the corporation was incorporated.  [¶.] I found him to be [an] ernest, well mannered young businessman, prepared to work hard to make his business grow and willing to learn new things involved in the growth of his busienss [sic].  [¶.]  He did not want to take any shortcuts to gain any extra advantage out of a tax situation.  [¶.]  He was always prepared to listen to me about good and bad implications of tax planning and made conservative business choices.
  Ash Katey

I met Vincent Ramos about 10 years ago through a friend.  Ever since then we have been good friends. Vincent has always been one of the friendliest, most humble, genuine and kind person I have ever met.  He is always willing to help anyone in need and would never ask for anything in return. . . When I had my 1ˢᵗ child, my husband and I asked him to be one of his Godfathers. . . In all those years I have known him he has always stayed the same good person that he has always been since the first day I met him.  [¶.]  Vincent

> is a loving, devoted husband, an amazing father to his three children and a reliable friend. . . [¶.] I can confirm that in the time I have known him, Vincent Ramos has been a reliable trustworthy and decent person. He is and always will be an asset to the community and to all his family and friends who love and care about him.
> Anna Bamba

> I met Vince about 3 years ago through mutual friends and had a chance to briefly meet his wife and kids over the time I've known him. [¶.] From the encounters I've had with Vince, I can say he is a very genuine person who is ambitious and very caring. He consistently does things for his family, wife, and kids and is very passionate about them and their well-being. As a friend, he had also been very caring and supportive of my life and business.
> Jeremy Wong

> I am writing this letter to support the efforts of Vincent Ramos returning to his family as soon as possible. Vincent has four children, a wife and other family that he loves and supports. [¶.] Vincent has always struck me as someone you could count on; someone who would be more than willing to lend a hand or help someone in need. . . [¶.] Over the years I spent a lot of time with Vincent. [H]e was always one of the most positive and respectful people around. You could tell he cared about people, doing well in life and contributing to the world in hopes of making it a better place.
> Kevin Thexton

As this Court can see, Vincent is extremely dedicated to his family. There is very little chance that he would flee his wife and children, and not abide by the conditions of bond. Moreover, his family home (where his wife and children reside) is the collateral that would be used for the bond. There is virtually no chance he would risk making them homeless by taking flight. As discussed above, Mr. Ramos has very close ties to his family and community. Therefore, this Court should set a reasonable bond.

### (b). Physical and mental condition

Mr. Ramos is physically and mentally fit. He suffers from no serious diseases or health conditions that would hinder his ability to attend all future court proceedings in this case.

       **( c ).**    <u>**Family ties**</u>

Please see above.

       **(d).**    <u>**Employment and Education**</u>

As far as education, Mr. Ramos spent two years at Kwantlen College studying business. In addition to being a good student, Mr. Ramos has always been a very hard worker. He began his career selling Amway products. Thereafter, from approximately 2001-2005, he worked as a salesperson for Rogers Cellular when he decided to start his own company in 2006. He has been selling Blackberry communication devices and found customers liked to use the text function for confidential communications. In 2008, he purchased his own servers and hired a tech person to install them. Mr. Ramos purchased licenses that were commercially available and already in use in the industry. He created no encryption programs, but used only those already on the market. We understand the security devices were like ones being used by our own Government on BlackBerrys they purchase.

In addition to working, Mr. Ramos also volunteers his time in the community. He is a coach to the Richmond Raiders Boys Flag Football team, which is a team consisting of eight year-olds. His son, Sharlem, plays on the team.

       **(e).**    <u>**Financial resources**</u>

Mr. Ramos has the financial resources to attend every court hearing and abide by whatever conditions this Court sets.

       **(f).**    <u>**Length of residence in the community**</u>

As stated above, Mr. Ramos has lived in Vancouver since he was four years-old. This Court should be aware that Mr. Ramos has a cousin in Newport Beach, California, that would be willing to house Mr. Ramos during the pendency of this case.

       **(g).**    <u>**Community ties**</u>

Again, as noted above, Mr. Ramos has a cousin in Southern California

where he can be housed during the pendency of this case. The fact that Mr. Ramos lives in Vancouver does not support detention since he has familial ties to Southern California. "If the defendant is a United States resident, the community to be considered must be at least as broad as the United States. Accordingly, [] 'community' [] embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." (*See Townsend*, 897 F.2d at 995 (citing, *e.g. Troung Dihn Hung v. United States*, 439 U.S. 1326 (1978) (ordering bail where defendant resided continuously in the community for 13 years and had extensive ties to the community); *United States v. Himler*, 797 F.2d 156, 162 (3d. Cir. 1986) (reversing order of detention because of defendant's family ties).) As Mr. Ramos has familial ties to Southern California, a reasonable bail should be set.

### (h). Past conduct

As stated above, Mr. Ramos has no negative past conduct to mention. His past conduct only speaks of an individual devoted to his family and serving his community.

### (I). History relating to drug or alcohol abuse

Mr. Ramos has no history of drug or alcohol abuse.

### (j). Criminal history

Mr. Ramos has no criminal history.

### (k). Record concerning appearance at court proceedings

Mr. Ramos has never had a failure to appear as he's never been charged with a crime.

### (l). Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law

Mr. Ramos was not on probation, parole, or supervised release at the time of his arrest.

### 4. The Nature and Seriousness of the Danger Posed By the Person's Release.

There would be no danger to any person or the community if Mr. Ramos were to be released on a reasonable bail. As stated above, Mr. Ramos is not charged with a violent crime. Moreover, he has no prior criminal record. Finally, as the character letters attached hereto attest, he is a kind and gentle, family man.

## III.
## CONCLUSION

A review of the factors enumerated in Section 3142(g) reveal that Mr. Ramos has rebutted the presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Ramos as required and the safety of the community. Mr. Ramos is respectfully requesting that this Court order the following combination of conditions for bail: (a) a corporate bond that would be secured by the residence that Mr. Ramos's wife, Sharel, and their four children currently reside in; (b) that Mr. Ramos would reside with his cousin, Ferdinand Tomas, in Newport Beach, California, during the pendency of this case (or, in the alternative, he can rent an apartment in San Diego); ( c ) GPS monitoring; and (d) any other condition that this Court deems appropriate to reasonably assure his appearance to all future court appearances and the safety of the community.

Dated: April 2, 2018                                    Respectfully submitted,

                                                         /s Michael Pancer
                                                         MICHAEL PANCER
                                                         Attorney for VINCENT RAMOS