```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3   UNITED STATES OF AMERICA,      )
                                    )  No. 3:18-CR-1404-WQH
 4             Plaintiff,           )
                                    )
 5   v.                             )  October 2, 2018
                                    )
 6   VINCENT RAMOS,                 )
                                    )  Courtroom 3A
 7             Defendant.           )
     _____)  San Diego, California
 8

 9          TRANSCRIPT OF DIGITALLY RECORDED PROCEEDINGS

10                     (Change of Plea)

11     BEFORE THE HONORABLE BARBARA LYNN MAJOR, MAGISTRATE JUDGE

12

13   APPEARANCES:
     FOR THE PLAINTIFF:        ANDREW PHILLIP YOUNG
14                             BENJAMIN KATZ
                               MARK PLETCHER
15                             Assistant U.S. Attorneys
                               U.S. Attorney's Office
16                             Southern District of California
                               880 Front Street, Room 6293
17                             San Diego, CA  92101-8893
                               (619)557-5610
18
     FOR THE DEFENDANT:        MICHAEL PANCER
19                             Attorney at Law
                               105 West F Street, Fourth Floor
20                             San Diego, CA  92101
                               (619)236-1826
21

22   COURT REPORTER:          AMANDA M. LeGORE
                               RDR, CRR, CRC, FCRR, CACSR
23                             U.S. District Court
                               333 West Broadway, Suite 420
24                             San Diego, CA 92101
                               amanda_legore@casd.uscourts.gov
25
```

```
 1                    (Tuesday, October 2, 2018; 10:06 a.m.)

 2

 3                         P R O C E E D I N G S

 4

 5              THE CLERK:  Calling matter 1, 2, 3, 4, and 6.

 6              (Other matters heard and not transcribed herein.)

 7              THE CLERK:  Matter 6, 18-CR-1404-WQH, USA verse

 8    Vincent Ramos.

 9              MR. PANCER:  Good morning, your Honor.  Michael

10    Pancer appearing on behalf of Mr. Ramos, who is present.

11              THE COURT:  Thank you.

12              MR. YOUNG:  Good morning, your Honor.  Andrew Young,

13    Mark Pletcher, and Ben Katz for the United States.

14              THE COURT:  Great.  Thanks.

15              UNIDENTIFIED SPEAKER:  Good morning, your Honor.

16              (Other matters heard and not transcribed herein.)

17              THE CLERK:  Vincent Ramos, is that your true name?

18              THE DEFENDANT:  Ah, yes.

19              THE CLERK:  Sir, do you now desire to withdraw your

20    former plea --

21              THE COURT:  I need to be able to see all of the

22    defendants.

23              THE DEFENDANT:  I'm sorry, your Honor.

24              THE CLERK:  -- of not guilty to Count 1 of the

25    Indictment, charging you with racketeering conspiracy to
```

```
 1    conduct enterprise affairs and to plead guilty?

 2              THE DEFENDANT:  Yes.

 3              THE CLERK:  How do you now plead to Count 1 of the

 4    Indictment?  Guilty or not guilty?

 5              THE DEFENDANT:  Ah, guilty.

 6              THE CLERK:  And, Counsel, do you waive reading of the

 7    count?

 8              MR. PANCER:  So agree.

 9              THE CLERK:  Thank you.

10              Will all defendants please raise your right hand.

11              (Defendants sworn.)

12              THE CLERK:  Mr. Ramos?

13              THE DEFENDANT:  Yes.

14              (Other matters heard and not transcribed herein.)

15              THE CLERK:  You may all lower your hands.

16              THE COURT:  All right.  Each of you are pleading

17    guilty to a different crime, charged in a different charging

18    document.  But much of what I have to say applies to all of

19    you, and that's why I'm taking your guilty pleas at the same

20    time.

21              I am going to do my very best to make it clear to you

22    what's happening here today.  If, however, at any point during

23    this proceeding you do not understand what's going on, it's up

24    to you to let me know and it's okay to interrupt me, to tell me

25    that you don't understand what's going on.  If I don't hear
```

1    from you today, I am going to assume that you understood

2    everything that happened here today.

3            Starting first with Mr. Guzman, how old are you, sir?

4            (Other matters heard and not transcribed herein.)

5            THE COURT:  Mr. Ramos, how old are you, sir?

6            THE DEFENDANT:  I'm 40.

7            THE COURT:  How far did you go in school?

8            THE DEFENDANT:  College.

9            THE COURT:  Did you graduate?

10           THE DEFENDANT:  No.

11           THE COURT:  Was all of your -- you graduated from

12   high school, though?

13           THE DEFENDANT:  (No audible response.)

14           THE COURT:  Was all of your education here in the

15   U.S.?

16           THE DEFENDANT:  Ah, no, it was in Canada.

17           THE COURT:  In Canada?

18           Do you read English fluently?

19           THE DEFENDANT:  Yes, I do.

20           THE COURT:  Have you taken any medication, drugs, or

21   other substance in the past three days?

22           THE DEFENDANT:  No.

23           THE COURT:  Turning to Mr. Seran (phonetic).

24           (Other matters heard and not transcribed herein.)

25           THE COURT:  Okay.  Returning to all of you.

1        I want to remind each of you you just raised your

2   right hand and agreed to tell the truth when you were placed

3   under oath.

4        What that means is that you must tell me the truth.

5   And if you do not tell me the truth, the false answers that you

6   give me could be used against you and you could be charged with

7   a totally separate crime called perjury or making a false

8   statement.

9        So it's extremely important that you listen very

10   carefully to everything I have to say, that you think before

11   you answer my questions, and that you answer my questions

12   truthfully.

13        Each of you also has the right to have a district

14   judge take your guilty plea.  I am a magistrate judge.  In

15   order for me to take your guilty plea today, you must give up

16   your right to appear in front of the district judge and

17   authorize me to go forward.

18        I have the two-page consent document, a separate one

19   for each of you, signed by you and your lawyer, in which you

20   give up that right.  If that's what you decide to do, it means

21   that I will take your guilty plea today and a different judge

22   will sentence you at a future date.

23        Is that how you want to proceed?

24        (Other matters heard and not transcribed herein.)

25        THE COURT:  Mr. Ramos?

1          THE DEFENDANT:  Yes.

2          (Other matters heard and not transcribed herein.)

3          THE COURT:  I accept the consent from each of you.

4          I want each of you now to listen very carefully

5    because you have important constitutional rights that you are

6    giving up by pleading guilty.

7          Each of you has the following constitutional rights:

8          You have the right to persist in your plea of not

9    guilty.  You have the right to a speedy and public trial before

10   a jury, or you may give up that right and permit a judge to try

11   your case without a jury.

12         You have a right to the assistance of counsel

13   throughout all proceedings, including a trial.  If you cannot

14   afford to pay an attorney, appointed counsel will represent you

15   through trial at no cost to you.

16         You have a right to confront and cross-examine the

17   witnesses against you, to testify, to present evidence, and to

18   compel witnesses to attend trial on your behalf.  And you have

19   the right against compelled self-incrimination, which means

20   that you are not required to testify at any hearing or trial

21   and the Government may not comment on your silence.  You have

22   all of these rights.

23         If you plead guilty today, there will be no trial and

24   you will give up all of the rights that I have just told you

25   about, with the exception that your lawyer will continue to

1   represent you through sentencing.

2           Is that how you want to proceed?

3           (Other matters heard and not transcribed herein.)

4           THE COURT:  Mr. Ramos?

5           THE DEFENDANT:  Yes.

6           (Other matters heard and not transcribed herein.)

7           THE COURT:  Each of you is pleading guilty to one or

8   more crimes.  The United States is required to prove every

9   element of every crime to a jury to a standard called beyond a

10  reasonable doubt.

11          By pleading guilty, you will be admitting every

12  element, so it's important that you know what they are.

13          You're all pleading guilty to different crimes, so

14  I'm going to speak with you separately.

15          Starting with Mr. Guzman.

16          (Other matters heard and not transcribed herein.)

17          THE COURT:  Mr. Ramos, you are pleading guilty to

18  RICO conspiracy, racketeering conspiracy to conduct enterprise

19  affairs.  That crime has the following elements:

20          First, Phantom Secure was an enterprise.

21          Second, Phantom Secure was engaged in interstate or

22  foreign commerce, or its activities in some way affected or

23  were contemplated to in some way affect interstate or foreign

24  commerce.

25          Third, you were employed by or associated with

```
 1    Phantom Secure.

 2              Fourth, there was an agreement between two or more

 3    persons to conduct or participate directly or indirectly in the

 4    conduct of Phantom Secure's affairs through a pattern of

 5    racketeering act -- activity.

 6              And, fifth, you became a member of the conspiracy,

 7    knowing of its illegal objects and intending to help accomplish

 8    those illegal objects.

 9              Do you understand that those are the elements that

10    the United States would have to prove and the ones that you

11    will be admitting by pleading guilty?

12              THE DEFENDANT:  Yes.

13              (Other matters heard and not transcribed herein.)

14              THE COURT:  Returning to all five of you again.

15              By pleading guilty to this crime, each of you are

16    facing certain maximum penalties.  And, again, it's important

17    that you know what they are.

18              Speaking, first, to Mr. Guzman and Mr. Garcia.

19              (Other matters heard and not transcribed herein.)

20              THE COURT:  Mr. Ramos, by pleading guilty --

21              MR. PANCER:  Your Honor, while you're talking to

22    Mr. Ramos, he may ask a question.  Is it okay if I stand here

23    just while you're addressing him?

24              THE COURT:  If he has a question, I'll let you go

25    over there and talk to him.
```

1                   MR. PANCER:  Okay.  Thank you.

2                   THE COURT:  Mr. Ramos, by pleading guilty to this

3       crime, sir, you are facing a maximum of 20 years in prison; a

4       maximum fine of $250,000; or twice the gross gain or loss from

5       the offense, whichever is greater; a mandatory special

6       assessment of $100; a maximum term of supervised release of

7       five years; forfeiture of all interest that you acquired or

8       maintained in violation of 18 U.S.C. Section 1962, including

9       all interests in securities, claims against any properties,

10      contractual rights of any kind affording an influence over any

11      enterprise which you established, operated, controlled,

12      conducted, or participated in the conduct of in violation of 18

13      USC 1962, and all properties constituting or derived from

14      proceeds obtained directly or indirectly from racketeering

15      activity.

16                  And you may immediately become ineligible for certain

17      federal benefits, including benefits under the food stamp

18      program.

19                  Do you understand that those are the maximum

20      penalties that you are facing by pleading guilty?

21                  THE DEFENDANT:  Ah, yes.

22                  THE COURT:  All right.  Mr. Seran.

23                  (Other matters heard and not transcribed herein.)

24                  THE COURT:  All right.  Speaking to all of you,

25      again.

1          The sentencing judge, in each of your cases, will

2     consider the sentencing guidelines as advisory in determining

3     your sentence.

4          Have you discussed with your attorney the sentencing

5     guidelines and how they may apply to you?

6          (Other matters heard and not transcribed herein.)

7          THE COURT:  Mr. Ramos?

8          THE DEFENDANT:  Yes.

9          (Other matters heard and not transcribed herein.)

10         THE COURT:  The sentencing guidelines are not

11    mandatory, so the sentencing judge may depart from them and

12    sentence you all the way up to the statutory maximum.

13         Do you understand that?

14         (Other matters heard and not transcribed herein.)

15         THE COURT:  Mr. Ramos?

16         THE DEFENDANT:  Yes.

17         (Other matters heard and not transcribed herein.)

18         THE COURT:  Returning to all of you.

19         Neither your attorney nor anyone else can guarantee

20    the sentence that you will receive.  If the sentence you

21    receive is more severe than you expect, you will still be bound

22    by your guilty plea, and you will not have a right to withdraw

23    your guilty plea.

24         Do you understand that?

25         (Other matters heard and not transcribed herein.)

```
 1              THE COURT:  Mr. Ramos?

 2              THE DEFENDANT:  Yes.

 3              (Other matters heard and not transcribed herein.)

 4              THE COURT:  If you receive a custodial sentence, you

 5    may receive a term of supervised release that will follow that

 6    sentence.

 7              And, Ms. Marquez, you will receive a term of

 8    supervised release.

 9              For all of you, if you do receive a term of

10    supervised release, that means that when you are released from

11    custody, you must comply with the terms and conditions imposed

12    by the sentencing judge.

13              If at any time during the period of supervised

14    release you are found to have violated the conditions of your

15    supervised release and depending upon the severity of that

16    violation, you could be returned to prison for the full amount

17    of the supervised release term.  You would not receive credit

18    for the time you've already served in custody, and a new term

19    of supervised release could be imposed.

20              If you again violate the terms of your supervised

21    release, this process could happen repeatedly.

22              Do you understand all of that?

23              (Other matters heard and not transcribed herein.)

24              THE COURT:  Mr. Ramos?

25              THE DEFENDANT:  Yes.
```

1          (Other matters heard and not transcribed herein.)

2          THE COURT:  Are you a United States citizen?

3          (Other matters heard and not transcribed herein.)

4          THE COURT:  Mr. Ramos?

5          THE DEFENDANT:  No.

6          THE COURT:  And you're a Canadian citizen?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.

9          (Other matters heard and not transcribed herein.)

10          THE COURT:  All right.  For Mr. Ramos, is this

11   conviction going to affect his status here, the likely result

12   deportation?  Are there immigration issues which we need to be

13   concerned about?

14          MR. PANCER:  Other than the plea agreement, your

15   Honor, at some point the Government will impose a transfer -- a

16   treaty transfer of Mr. Ramos to go back to Canada.  I don't

17   know if that's what the Court is inquiring about.

18          THE COURT:  No.  It's more of like -- like the

19   standard that the Mexican citizens are frequently deported from

20   our country.  Is he going to be deported from the country if he

21   doesn't get that transfer and gets released?

22          MR. PANCER:  Well, if he doesn't get a transfer, yes

23   at the conclusion of the sentencing (indiscernible).

24          THE COURT:  Going into -- is there an immigration

25   hold?

```
 1            MR. PANCER:  Your Honor, I'm not -- I'm not sure.  I
 2   hadn't been notified (indiscernible).
 3            THE COURT:  All right.  The Government?
 4            MR. YOUNG:  Your Honor, there's not an immigration
 5   hold as far as I know, but it is a virtual certainty that he
 6   will be deported, if he finishes his sentence while still in
 7   the United States.
 8            THE COURT:  Okay.  Do you have any quarrel with that
 9   statement?
10            MR. PANCER:  No.  That's correct.
11            THE COURT:  Okay.  For the other four defendants.
12            (Other matters heard and not transcribed herein.)
13            THE COURT:  So speaking first to Mr. Ramos.
14            Sir, I understand that there is a possibility that
15   your prison sentence eventually may be transferred from one
16   that you serve here in the United States to one that you serve
17   in Canada.
18            If that doesn't happen and you complete your sentence
19   here in the United States, it is a virtual certainty that you
20   will be deported or removed from the United States after you
21   complete your sentence.
22            Understanding that, do you still want to plead -- and
23   the deportation would be a result of this conviction.
24   Understanding that, do you still want to plead guilty?
25            THE DEFENDANT:  Ah, yes.
```

1           THE COURT:  Okay.  Speaking to the other four

2   defendants, everyone other than Mr. Ramos.

3           (Other matters heard and not transcribed herein.)

4           THE COURT:  I have in front of me a written plea

5   agreement, separate one for each of you, and we're going to go

6   through those now.

7           I'm going to speak to the four individuals who are

8   Spanish speakers first.

9           (Other matters heard and not transcribed herein.)

10          THE COURT:  Speaking now to Mr. Ramos.

11          Sir, I have a plea agreement signed by you on the

12   last page.  I also have two addendums and two exhibits.  Each

13   of the addendums is signed by you and your lawyer.

14          Before you signed each of these documents, did you

15   read each document, including the exhibits?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You read them in their entirety?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you have enough time with your

20   lawyers to discuss each one of these documents?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Did your lawyers explain each and every

23   document and each and every term and condition to you?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Did they answer all of your questions?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you satisfied with the representation

3  that you have received from your lawyer?

4          THE DEFENDANT:  Yes.

5          THE COURT:  By placing your signature on the last

6  page of each of those documents and your initials on each page,

7  did that signify that you read each document, that you

8  understood each document, and that you agree to comply with all

9  of the terms and conditions set forth in each document?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Returning to all five of you again.

12          Each of your plea agreements -- each of your plea

13  agreements contains a provision entitled, "Defendant waives

14  appeal and collateral attack."

15          In that provision, you give up your right to appeal

16  and collaterally attack your conviction and sentence in

17  specific circumstances.

18          Do you understand that provision?

19          (Other matters heard and not transcribed herein.)

20          THE COURT:  Mr. Ramos?

21          THE DEFENDANT:  Yes.

22          (Other matters heard and not transcribed herein.)

23          THE COURT:  Speaking to the lawyers for all of the

24  defendants, have you discussed this plea agreement?

25          And for Mr. Ramos' plea agreement, it means all of

1    the addendums as well.

2              Have you discussed this plea agreement thoroughly

3    with your client, including the provision regarding waiver of

4    appeal or collateral attack?

5              (Other matters heard and not transcribed herein.)

6              THE COURT:  For Mr. Ramos?

7              MR. PANCER:  Yes, your Honor.

8              (Other matters heard and not transcribed herein.)

9              THE COURT:  And in your opinion, does each of your

10   clients understand the plea agreement in its entirety?  For

11   Mr. Guzman?

12             (Other matters heard and not transcribed herein.)

13             THE COURT:  For Mr. Ramos?

14             MR. PANCER:  Yes, your Honor.

15             (Other matters heard and not transcribed herein.)

16             THE COURT:  Returning to all five defendants then.

17             Have any promises been made to you by anybody in

18   order to get you to plead guilty that are not included in the

19   written plea agreement?

20             And for Mr. Ramos, the plea agreement also means the

21   addendums.

22             Mr. Guzman, has any other promises been made to you

23   that are not in the written plea agreement?

24             (Other matters heard and not transcribed herein.)

25             THE COURT:  Mr. Ramos?

```
 1              THE DEFENDANT:  No.

 2              (Other matters heard and not transcribed herein.)

 3              THE COURT:  Has anyone threatened you, forced you, or

 4   coerced you in any way to plead guilty?

 5              (Other matters heard and not transcribed herein.)

 6              THE COURT:  Mr. Ramos?

 7              THE DEFENDANT:  No.

 8              (Other matters heard and not transcribed herein.)

 9              THE COURT:  Are you pleading guilty to help some

10   other person besides yourself?

11              (Other matters heard and not transcribed herein.)

12              THE COURT:  Mr. Ramos?

13              THE DEFENDANT:  No.

14              (Other matters heard and not transcribed herein.)

15              THE COURT:  Is it true, then, that you are pleading

16   guilty because you are guilty and for no other reason?

17              (Other matters heard and not transcribed herein.)

18              THE COURT:  Mr. Ramos?

19              THE DEFENDANT:  Yes.

20              (Other matters heard and not transcribed herein.)

21              THE COURT:  I'm now going to speak with each of you

22   individually about what it is that you did that makes you

23   guilty of this crime.

24              I want to remind you that you are under oath, so you

25   must tell me the truth.
```

1          Mr. Guzman, again, I'm going to start with you, sir.

2          (Other matters heard and not transcribed herein.)

3          THE COURT:  Turning to Mr. Ramos.

4          Sir, initially, with regard to Phantom Secure, do you

5  agree that that is an enterprise?  That is, it was an

6  association and group of individuals associated in fact for the

7  purpose of aiding and abetting the importation, exportation,

8  and distribution of illegal drugs throughout the world; also

9  for obstructing justice with the destruction and concealment of

10  evidence from law enforcement and money laundering?

11          THE DEFENDANT:  Yes.

12          THE COURT:  If you want to stand next to your client

13  during this part, you can.

14          MR. PANCER:  (Indiscernible.)

15          THE COURT:  Certainly.

16          Do you agree that the Phantom Secure enterprise

17  included yourself and co-defendants Kim Rodd, Younes Nasri, and

18  others?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you agree that the Phantom Secure

21  enterprise consists of administrators, distributors, and

22  agents, as defined on page 4 of the plea agreement?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Through Phantom Secure, did you and

25  others facilitate the importation, exportation, and

1    distribution of wholesale quantities of cocaine, heroin, and

2    methamphetamine throughout the world?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Was it reasonably foreseeable to you that

5    as part of this conspiracy, Phantom Secure's customers would

6    and did use Phantom Secure devices to coordinate the

7    importation, exportation, and distribution of more than 450

8    kilograms of cocaine?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you admit, again, that through Phantom

11   Secure, you and others manufactured and sold devices to send

12   and receive encrypted messages?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And to -- and in an attempt to stay out

15   of the reach of the United States law enforcement, did you and

16   others maintain Phantom Secure servers in Pan -- Panama and

17   Hong Kong and use virtual proxy servers to further disguise the

18   physical locations of Phantom Secure servers?

19             THE DEFENDANT:  Yes.

20             THE COURT:  As part of the Phantom Secure enterprise,

21   did you and others require a personal reference -- that is, a

22   vouch from existing clients -- before you would sell a device

23   and services to a new customer?

24             MR. PANCER:  Your Honor, may I comment here?

25             Some of the allegations -- this one and I think the

```
 1   one to follow, my client didn't personally do that.  But he
 2   does agree the Government could prove that other individuals
 3   involved in the conspiracy did do that.  And that's the basis
 4   of our accepting some of the facts in the factual basis.
 5            THE COURT:  Government?
 6            MR. YOUNG:  Yes, your Honor.
 7            The Government would proffer that we have evidence
 8   that prove these facts beyond a reasonable doubt.
 9            THE COURT:  Again, that doesn't address this issue.
10            The question is are you saying that the defendant
11   himself did this, the destruction of evidence?  Or are you
12   saying others -- do you accept his statement that others did
13   it?
14            I'm sorry.  This is the personal referral.
15            MR. YOUNG:  We accept -- we accept his representation
16   that he did not personally do it.
17            THE COURT:  But that others did?
18            MR. PANCER:  But others did.
19            THE COURT:  Okay.  So, Mr. Ramos, do you agree that
20   individuals who were part of the Phantom Secure enterprise
21   required a personal reference from existing clients before they
22   would sell a device and services to a new customer, and that
23   they did that to impede law enforcement?
24            THE DEFENDANT:  Ah, yes.
25            THE COURT:  And during your involvement with Phantom
```

1    Secure, you knew that was going on.  Is that true?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you admit that you and others used the

4    word "executive" to describe clients in an effort to avoid law

5    enforcement?  These were individuals who were involved in the

6    illegal activities, including drug trafficking?

7              THE DEFENDANT:  Ah, yes.

8              THE COURT:  Do you also admit that you and others

9    strode to remain anonymous to avoid law enforcement?  That is,

10   prior to that, you did not request a tracker report, clients'

11   real names, and interacted only using user names, e-mail, and

12   those with nicknames?

13             THE DEFENDANT:  Ah, yes.

14             THE COURT:  Do you admit that through Phantom Secure,

15   you and others obstructed law enforcement by deleting -- that

16   is, wiping devices that had been received by law enforcement,

17   to destroy evidence that the devices contained?

18             THE DEFENDANT:  Yes.

19             MR. PANCER:  And, your Honor --

20             THE COURT:  And did you personally do that?

21             THE DEFENDANT:  No, your Honor.  The Court's

22   assessment -- (indiscernible).  He personally did not do that,

23   no.

24             THE COURT:  Let's have him answer the question.

25             How about that?

1    THE DEFENDANT:  Yes, I knew that was going on.

2    THE COURT:  Did you personally do it?

3    THE DEFENDANT:  No, I didn't.

4    THE COURT:  Okay.  But you knew that other members of

5  Phantom Secure were in fact wiping devices?

6    THE DEFENDANT:  Correct.

7    THE COURT:  All right.  Did you also know that

8  Phantom Secure administrators, distributors, and agents would

9  suspend service and delete contents of devices if it was even

10 suspected that law enforcement or an informant was using the

11 device as part of law enforcement investigation?

12   THE DEFENDANT:  I am.

13   THE COURT:  You knew that?

14   THE DEFENDANT:  (Indiscernible.)

15   THE COURT:  Through Phantom Secure, did you and

16 others use digital currencies, including Bitcoin, to facilitate

17 illegal transactions on the website to protect the membership's

18 anonymity and to facilitate the laundering of Phantom Secure

19 enterprise's ill-gotten gains?

20   THE DEFENDANT:  Ah, yes.

21   THE COURT:  And you -- you personally did that using

22 Bitcoin, for those purposes?

23   THE DEFENDANT:  Ah, yes.

24   THE COURT:  Do --

25   MR. PANCER:  (Indiscernible) I'm sorry.  The --

1   (indiscernible), it was for those purposes.  (Indiscernible.)

2   That's correct.

3           THE COURT:  Okay.  And is what your lawyer just said

4   true in all respects?  So it was for those purposes, as well as

5   others?

6           THE DEFENDANT:  Correct.

7           THE COURT:  And did you know, at the time you were

8   part of this enterprise, that Phantom Secure administrators,

9   distributors, and agents would set up and maintain shell

10  companies to hide the proceeds generated by selling Phantom

11  Secure's encryption devices and services?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you admit that Phantom Secure was

14  engaged in interstate and foreign commerce?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Was your position with Phantom Secure

17  that of chief executive officer and that you had

18  decision-making authority over Phantom Secure's operation

19  throughout the world?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Beginning as early as 2008 -- January

22  2008 and continuing up to and including March of 2018, did you

23  reach an agreement with other people, including individuals by

24  the last name Rodd and Nasri to conduct Phantom Secure's

25  affairs through a pattern of rack -- racketeering activity?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Specifically, was your agreement with

3    your co-conspirators that Phantom Secure would be engaged in

4    multiple racketeering activities on a nearly daily basis for

5    the benefit of Phantom Secure?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And do you admit that these racketeering

8    acts would have at least included facilitating the importation,

9    exportation, and distribution of wholesale and retail

10   quantities of illegal narcotics, including cocaine, heroin, and

11   methamphetamine?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Also including laundering of the illegal

14   proceeds of Phantom Secure enterprise?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And also including obstructing justice

17   through the deletion and concealment of evidence from law

18   enforcement?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At the time that you reached this

21   agreement with these two individuals and others to conduct the

22   pattern of racketeering activity, did you know that the purpose

23   of the agreement or conspiracy was to commit the crimes using

24   Phantom Secure, the illegal objects of the conspiracy, to

25   crimes we've just discussed?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And when you became a member of this

3     agreement or conspiracy, was it your intention to help commit

4     those crimes through using Phantom Secure?

5          THE DEFENDANT:  Yes.  (Indiscernible.)

6          THE COURT:  Do you admit that a CEO of Phantom Secure

7     with decision-making authority over administrators,

8     distributors, and agents operating throughout the world, you

9     were an organizer and leader of that enterprise, which involved

10    more than five participants and was otherwise extensive?

11         THE DEFENDANT:  Yes.

12         THE COURT:  The United States satisfied with the

13    factual basis?

14         MR. YOUNG:  Yes, your Honor.

15         THE COURT:  Actually, we have to get a forfeiture.

16         What specifically was it?  80 million?

17         MR. YOUNG:  $80 million money judgment, your Honor.

18         THE COURT:  Is there anything in -- I see there's

19    property.  Is he agreeing to forfeit that?

20         MR. YOUNG:  Yes, your Honor.

21         THE COURT:  Anything else?  So I see the property is

22    on page 2 and the 80 million.

23         Anything else?

24         MR. YOUNG:  You said 80, your Honor?

25         And it would be to close -- to sell properties he's

1   agreed to forfeit.

2          THE COURT:  Okay.  So the actual forfeiture order

3   will be entered by the district judge, but I want to make sure

4   that you understand.

5          In this addendum, you are specifically agreeing to

6   recommend that an 80 million money judgment be entered against

7   you.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And are you agreeing to that because at

10  least $80 million is the money that you received as a result of

11  the illegal activity from this conspiracy?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And then there are -- Exhibit B is the

14  Phantom Secure enterprise domain names.

15         Do you agree to give up any and all right or

16  ownership that you have of those domain names?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And then Exhibit A is -- is this a

19  property that's actually in your possession?

20         MR. PANCER:  Some of it is, your Honor, some of it is

21  not.

22         THE COURT:  Okay.  Exhibit A and page 2 of the

23  forfeiture addendum lists specific pieces of property, cash, or

24  other types of -- so real property and then other types of

25  property that are all disclosed; cash in various forms.  Do

1   you -- as well as IP server router protocol numbers.

2            MR. PANCER:  Your Honor?

3            THE COURT:  Um-hmm.

4            MR. PANCER:  The -- Exhibit A details real property,

5   currency, virtual currency, intellectual property, tangible,

6   and intangible property rights.  Pretty much the full scope of

7   all types of property.

8            THE COURT:  Property.  Okay.

9            Have you read Exhibit A carefully?

10           THE DEFENDANT:  Yes.

11           THE COURT:  As well as the forfeiture addendum in

12  Exhibit B?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Okay.  And do you agree to give up any

15  and all right to all of the properties and monetary amounts

16  identified in all of these documents?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Is the United States satisfied with that?

19           MR. YOUNG:  Yes.  And the plea made voluntarily and

20  with your concurrence, Counsel?

21           MR. PANCER:  Yes.

22           THE COURT:  Do you also agree that he's knowingly and

23  voluntarily giving up all of those rights to the forfeiture

24  items?

25           MR. PANCER:  I do.

1    THE COURT:  All right.  Turning to Mr. Seran.

2    (Other matters heard and not transcribed herein.)

3    THE COURT:  Returning to all five defendants.

4    Understanding the maximum penalty that you are

5    facing -- for Ms. Marquez, the mandatory minimum penalty that

6    you are facing.  For all of you, the rights that you have and

7    are giving up, and all of the other consequences of your guilty

8    plea, do you still want to plead guilty?

9    (Other matters heard and not transcribed herein.)

10    THE COURT:  Mr. Ramos?

11    THE DEFENDANT:  Yes.

12    (Other matters heard and not transcribed herein.)

13    THE COURT:  Mr. Ramos, how do you plead to the crime

14    of racketeering, conspiracy to conduct -- conduct enterprise

15    affairs as charged in Count 1 of the Indictment?  Guilty or not

16    guilty?

17    THE DEFENDANT:  Guilty.

18    THE COURT:  And do you agree to give up all rights to

19    the items that we discussed, listed in the forfeiture addendum?

20    THE DEFENDANT:  I do.

21    (Other matters heard and not transcribed herein.)

22    THE COURT:  Speaking to all of you.

23    Based upon everything that has happened here in court

24    today, as well as all of the written documents in front of me,

25    I find each of your guilty pleas is made knowingly and

1   voluntarily, with a full understanding of the nature of the

2   charge, the rights that you have and are giving up, and all of

3   the other consequence of your guilty plea.

4           I also find that there is a factual basis for your

5   guilty plea, and I therefore recommend to the district judge

6   that he or she accept your guilty plea.  And I'm going to set

7   this for sentencing in front of that judge.

8           (Other matters heard and not transcribed herein.)

9           THE COURT:  And, Mr. Ramos, you are ordered to appear

10  in Judge Hayes's courtroom on December 17th at 9:00 a.m.

11          MR. PANCER:  Excuse me, your Honor.  May I address

12  that sentencing date?

13          THE COURT:  Not right now.

14          For all of you, I find the time between today and the

15  sentencing hearing date excludable under the Speedy Trial Act

16  on the grounds that the district judge may consider the

17  proposed plea agreement.

18          I hereby vacate all hearing dates, other than the

19  sentencing hearing.  I order Probation to prepare a presentence

20  report.

21          Do you withdraw the motions on behalf of Mr. Seran?

22          (Other matters heard and not transcribed herein.)

23          THE COURT:  Mr. Ramos?

24          MR. PANCER:  Yes, your Honor.

25          THE COURT:  And I order Probation to prepare a

1   presence report for each and every one of them.

2           What is the issue on Mr. Ramos's sentencing date?

3           MR. PANCER:  Your Honor, (indiscernible) to arrange

4   for (indiscernible) prior to the sentencing date.  The Court

5   (indiscernible) considerable --

6           THE COURT:  You have got to contact Judge Hayes.  You

7   get one date, and you got it.

8           All right.  That's it for today for all of you.  Good

9   luck to you.

10          UNIDENTIFIED SPEAKER:  Thank you, your Honor.

11          (Conclusion of proceedings.)

12                       --oOo--

13  I certify, by signing below, that the foregoing is a correct

14  stenographic transcript, to the best of my ability, of the

15  digital recording of the audio proceedings had in the

16  above-entitled matter this 22nd day of October, 2018.  A

17  transcript without an original signature or conformed signature

18  is not certified.  I further certify that the transcript fees

19  and format comply with those prescribed by the Court and the

20  Judicial Conference of the United States.

21

        /S/ Amanda M. LeGore

22      _____

23      AMANDA M. LeGORE, RDR, CRR, CRC, FCRR, CA-CSR

24

25